GASQUET ET AL *vs.* THORN.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT, JUDGE
BUCHANAN, PRESIDING.

Where one guaranties the payment of an existing debt, the obligation he
contracts is essentially one of suretyship, in whatever form of words it
may be clothed.

So, whatever may be the character of the primitive obligation, whether an endorsement or other commercial engagement, the guarantor's accessory obligation does not partake of its commercial character, but is absolute, if the debt is not paid.

The guarrantor of a note endorsed by another, is not entitled to notice of protest in order to make him liable.

Contracts of guaranty of existing debts, entered into in this state, are to be construed in reference to the municipal law, or Louisiana Code, and are not regulated by the *lex mercatoria*.

So, in this case, the defendant guarantied the payment of a promissory note, and became the surety of the makers, although it does not appear the latter were acquainted with his engagement.

The defendant as guarantor, cannot claim to be discharged from liability by the neglect of the plaintiff to give him notice of a demand and non-payment.

EASTERN DIST.

*March*, 1840.

GASQUET ET AL.
*vs.*
THORN.

This is an action against the guarrantor of a promissory note. The plaintiffs are the payees and holders of this note signed by Ripley & Thorn, dated the 30th January, 1836, payable fifteen months after date.

After the execution of the note, to wit., on the 3d of February, 1836, the defendant, R. H. Thorn, gave a written obligation as follows :

" I hereby guaranty to Messrs. Gasquet, Parish & Co., *the payment* of Ripley & Thorn's three notes of date in their favor, &c."

The last of these notes was protested for non-payment, and the plaintiffs looked to the guarantor.

He denies his liability or indebtedness to the plaintiffs.

The district judge was of opinion the obligation of the guarantor of a particular note was similar to that of an endorser, and he is entitled to strict notice of demand and non-payment, which was not given in this case. There was judgment for the defendant as in case of non-suit; and the plaintiffs appealed.

*Wharton*, for the plaintiffs and appellants, contended :

1st. In a suit against a guarantor of a particular note, it is not necessary to prove notice to him of the protest of the note guarantied. He is bound without any notice.

2d. If notice be necessary, it must be on the same grounds that it is given to the drawer of a bill of exchange, or endorser, that either may be enabled to pursue the maker, or acceptor, and to secure himself.

3d. Notice is either waived voluntarily or by operation of law ; insolvency of the maker of a note, in some cases, excuses notice to the guarantor.

*L. Peirce,* contra, insisted there was no error in the judgment. That the liability of a guarantor must be decided by the *lex mercatoria,* and that he is entitled to strict notice of default of payment.

*Bullard, J.,* delivered the opinion of the court.

This is an action to recover the amount of a promissory note, drawn by Ripley & Thorn to the plaintiffs' order, upon a written engagement of the defendant, not a party to the note, to guaranty the payment of it, together with two other notes of the same date. The answer contains nothing more than a denial of indebtedness. The District Court being of opinion that the obligations of the guarantor of a particular note, are similar to those of an endorser, *i. e.,* to pay in case of non-payment by the previous parties, provided demand is made and due notice given of default; and, no such notice being shown in this case, gave judgment against the plaintiffs as in case of a non-suit, and they appealed.

If the liability of the defendant were to be tested by the law as settled by the Supreme Court of the United States, the conclusion to which the District Court came, would be, perhaps, fully supported. But a difficulty meets us at the threshhold of this inquiry, to wit: according to what system of laws are the obligations of the parties to this contract to be governed ? Did they contract with reference to the municipal law of Louisiana, or to the *lex mercatoria* as expounded by the highest court of the union ? And, does there exist an important difference between those two systems? Does the contract in question present any features essentially different from that of suretyship, as defined by the Civil Code ?

There is a marked difference between a letter of credit, contemplating a future engagement on the part of its bearer, for which the writer becomes responsible, and the promise to guaranty the payment of an existing debt contracted by another. The former is treated by the best writers on the civil law, as embracing essentially the contract of *mandatum* ; the person to whom the letter is addressed, and who acts under it, being regarded in a qualified sense as the mandatory or agent of the writer, and hence arises the obligation of the latter to indemnify him. "It is, says Pothier, of the essence of the contract of *mandatum*, that the *mandator*, or principal, should have the will or intention at his own risk, to confide to the mandatory the affair which forms the object of the contract and to engage to indemnify him, and that the mandatory should have the will to undertake the affair. It is this mutual will which constitutes the contract. It is this, also, which distinguishes the *mandatum* from the simple recommendation ; for, when I recommend to you a person, we contract towards each other no sort of obligation." The author proceeds to illustrate these principles by a variety of examples. *Pothier Contrat de Mandat, No*. 18 *et seq.*

These principles of the Roman law lie at the foundation of all guarantees of a prospective character, and are believed to be of universal application. But on the other hand, when one accedes to the existing obligation of another, and engages or promises to see it performed, he becomes essentially a surety ; the contract entered into is that of suretyship, in whatever form of words it may be clothed ; whether the words guarantor, or security, or surety be used, we look to the essence rather than the form. Our own code contains clear and distinct provisions on this subject, with reference to which contracts of that character entered into here and to be executed here, must be governed. The definition of suretyship in the code is sufficiently broad to embrace the case now before us. It is defined to be "an accessory promise by which a person binds himself for another already bound, and agrees with the creditor to satisfy the obligation, if the debtor does not." Article 3004.

EASTERN DIST.
*March*, 1840.

GASQUET ET AL.
*vs.*
THORN.

Where one guaranties the payment of an existing debt, the obligation he contracts is essentially one of suretyship, in whatever form of words it may be clothed.

So, whatever may be the character of the primitive obligation, whether an endorsement or other commer-

So, in this case, the defendant guarantied the payment of a promissory note, and became the surety of the makers, although it does not appear the latter were acquainted with his engagement.

The defendant, as guarantor, cannot claim to be discharged from liability by the neglect of the plaintiff to give him notice of a demand and non-payment.

Whatever may be the character of the primitive or principal obligation, whether it be an endorsement or acceptance of a bill of exchange, or other engagement clearly commercial, and to be regulated by the *lex mercatoria,* it is not logical to conclude that the accessory obligation by which a third person warrants or guaranties its performance, partakes of its commercial character, and is to be construed by the same system of. laws.    If A, at my request, and under my guaranty, has endorsed the note of my friend, it does not follow that I am entitled to notice of protest in order to make me liable.

Whatever might be considered in other states of the union to be the rights and obligations of the parties to the contract now under consideration, we are of opinion that they must be ascertained by our own municipal code.    The contract is between two of our own citizens, and to be executed here ; the payment of a promissory note at maturity was guarantied. The defendant, in our opinion, became the surety of the makers of that note, although it does not appear that the latter were acquainted with his engagement.    Article 3007. If the defendant had claimed the privilege of discussion, we do not perceive how it could have been refused him ; and he can only be released from his obligation to pay in some of the modes pointed out by the code.    He is clearly not discharged from liability, by the neglect of the plaintiffs to give him notice of a demand and non-payment of the promissory note.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be avoided and reversed, and that the plaintiff recover of the defendant, nineteen hundred and sixty dollars and seventy-eight cents, with interest at ten per cent. from the 3d day of May, 1837, until paid, and costs in both courts.