378 So.2d 495 (1979)
WISCONSIN CAPITAL CORPORATION
v.
TRANS WORLD LAND TITLE CORP. et al.
No. 10075.
Court of Appeal of Louisiana, Fourth Circuit.
November 20, 1979.
Rehearing Denied January 18, 1980.
Walter R. Fitzpatrick, Jr., New Orleans, for plaintiff-appellee.
Charles E. McHale, Jr., New Orleans, for defendants-appellants.
Before SAMUEL, LEMMON and STOULIG, JJ.
LEMMON, Judge.
This is a suit on a promissory note originally filed against the maker, Trans World Land Title Corporation, and three endorsers, including Auster Oil and Gas, Inc., all of whom had bound themselves in solido.[1] Prior to the trial Auster was dismissed from the suit by judgment on joint motion. The other two endorsers and Trans World have now appealed from a judgment, rendered after a trial on the merits, which held them liable in solido for the amount of the note. The principal issue on appeal is whether plaintiff's release of Auster operated as a discharge of the other co-debtors in solido under C.C. art. 2203.[2]
Upon being served in 1976 with the petition, Auster filed an answer denying liability on the 1971 note on the basis that it had entered into a written agreement with *496 plaintiff on June 19, 1972 for termination of its obligation and had actually been released by an agreement dated October 26, 1973.
In August, 1977 the court granted a joint motion to dismiss Auster from the suit, plaintiff reserving its rights against all other defendants. However, at the May, 1978 trial the other defendants, having pleaded the affirmative defense of extinguishment of the obligation, contended Auster was actually released by the October, 1973 agreement, which did not contain an express reservation of plaintiff's rights against the other co-debtors in solido.
The October, 1973 contract between plaintiff and Trans World was entitled "Assignment and Agreement for Substitution of Indebtedness and Collateral"[3]. In the contract the parties declared (1) that plaintiff was the holder of two notes, the one for $105,000.00 presently in suit and a $35,000.00 note executed by both Trans World and Auster, (2) that Trans World was the beneficial owner of rights in a certain unrelated contract to the extent of at least $175,000.00, and that:
"(3) Trans World Land Title Corporation does hereby and herein transfer and assign unto `Holder' the total sum of $175,000 (One hundred seventy-five thousand dollars and no/100) and upon payment of same payable out of the `Net Proceeds' and `Net Operating Proceeds' under the said Contract of July 18, 1973, the same to protect and secure the said `Holder' for the repayment of the total amount of the promissory notes hereinabove enumerated.
"(4) In consideration of this assignment by Trans World Land Title Corporation unto `Holder' in the total amount of $175,000 (One hundred seventy-five thousand dollars and no/100) and upon payment of same payable out of the `Net Proceeds' and `Net Operating Proceeds' under the said contract of July 18, 1978, `Holder' has simultaneously upon the acceptance of this assignment surrendered to Trans World Land Title Corporation each of the above enumerated notes, and any and all collateral held and/or pledged together with said notes, the receipt of which is hereby acknowledged and `Holder' does simultaneously, with the execution hereof, relieve and release Trans World Land Title Corporation, any other makers of said notes, together with the Endorsers and/or Guarantors from any liability regarding said indebtedness and/or any agreements in connection therewith, other than the representation and assignment contained herein." (Emphasis supplied)
Contemporaneous with the execution of the October, 1973 contract plaintiff signed the following letter addressed to Trans World:
"Gentlemen:
"We have this date accepted from you an `Assignment and Agreement for Substitution of Indebtedness and Collateral.' The document referred to above contains two notes, one for $105,000.00 dated 7/15/71 and the second for $35,000.00 dated 7/15/71. The total of these two notes is $140,000.00. Payments have been made by Trans World Land Title Corporation and/or Auster Oil Company in consideration of the above referred to `Assignment and Agreement for Substitution of Indebtedness and Collateral.' We hereby assign upon payment of $175,000 to Trans World Land Title Corporation all of our rights, title and interest in and to the following:
"A. Option to acquire 4% and/or 5,000 shares of Capital Resources Corporation and/or Recreational Planners Inc. (RPI).
"B. Option to acquire $28,500 of the preferred stock of Auster Oil and Gas, Inc.
"C. The balance of $6,750 still due by Auster Oil and Gas, Inc. on the $35,000.00 note dated *497 "D. Any and all fees and/or expenses due to Wisconsin Capital Corporation, Herbert O. Schoenherr, and Earl A. Charlton.
"E. This document is a complete release of any and all claims and demands of any nature whatsoever against Auster Oil and Gas, Inc., now and upon payment of $175,000 then, Trans World Land Title Corporation, Capital Resources Corporation, Recreational Planners, Inc., and any predecessor corporation, their officers and directors. However, Auster Oil & Gas officers and directors are now released."
(Emphasis supplied)
Arguing that the documents were clearly and unambiguously intended to substitute $175,000.00 in other collateral for $140,000.00 in promissory notes, defendants objected to parol testimony as to the intent of the parties. The trial court correctly allowed the testimony to explain the ambiguous documents and the intent of the contracting parties, particularly since the emphasized words had been added by plaintiff's officer to the documents prepared by defendants.
Plaintiff's officer, who was the only witness presented at trial, testified: He was summoned to New Orleans in October, 1973 to receive payment of the note, but upon arrival was asked to execute the two documents prepared by defendants. He refused to release the notes prior to payment, but executed the documents after adding the emphasized words. He intended to release Auster only upon payment of the notes (Auster still owed $6,750.00 on the $35,000.00 note), and he did not reserve his rights against any other parties at the time because there was "nothing to reserve". He explained that the release was not to be effective until the $175,000.00 was paid, and that since payment was never made, Auster had never been released. Finally, he stated that Auster's payment of $17,000.00 to plaintiff at the time of the judgment of dismissal involved another transaction, but that dismissal was part of the consideration for the payment.
Defendants had the burden of proving their affirmative defense, and they simply failed to prove that Auster had been released at any time prior to the judgment of dismissal which contained an express reservation of plaintiff's rights against the other co-debtors. Neither the contract nor the letter clearly released Auster in October, 1973. The documents prepared by defendants were at best ambiguous. Under plaintiff's explanation of the contract (which was consistent with the contractual language and which was accepted by the trial court) the makers and endorsers of the two notes were to be released only upon payment of $175,000.00, payable out of the proceeds of the partial contract rights transferred to plaintiff. Indeed, the contract (before addition of the emphasized words) clearly provided for surrender of the notes simultaneously with acceptance of the contract, and the fact that the notes were not surrendered then indicates the parties intended by the altered contract to provide for surrender of the notes and for release of all co-debtors only upon actual payment. This fact militates against defendants' contention that the parties intended a novation or even an unqualified and immediate substitution of collateral.
While the language of Section E of the letter is more puzzling (particularly the phrase "now and upon payment of $175,000 then"), the ambiguity does not enure to defendants' benefit in fulfilling their burden of proof. When the letter is construed with the contemporaneous contract, in the light of plaintiff's officer's explanation, the only parties clearly released were Auster's officers and directors, but since these persons were not shown to be co-debtors with defendants on the $105,000.00 note, their release did not operate as a discharge of defendants.
Nevertheless, the record clearly establishes Auster was one of four co-debtors bound in solido on the debt, and the second paragraph of C.C. art. 2203 prohibits the creditor from releasing one co-debtor and recovering the entire debt from the other *498 co-debtors. Under the rules of solidary obligors the creditor who releases one co-debtor and seeks to collect the debt from the other co-debtors in solido must allow a reduction of the part of the co-debtor whom the creditor has released. Louisiana Bank and Trust Co., Crowley v. Boutte, 309 So.2d 274 (La.1975). See also C.C. art. 2100.
Accordingly, the judgment of the trial court is amended to reduce the principal amount to $78,750.00. As amended, the judgment is affirmed.
AMENDED AND AFFIRMED.
NOTES
[1] A fourth alleged endorser was dismissed at trial when the parties stipulated he had never signed a proposed personal endorsement.
[2] C.C. art. 2203 provides:

"The remission or conventional discharge in favor of one of the codebtors in Solido, discharges all the others, unless the creditor has expressly reserved his right against the latter.
"In the latter case, he can not claim the debt without making a reduction of the part of him to whom he has made the remission."
[3] The June, 1972 contract, in which plaintiff allegedly agreed to terminate Auster's obligation, was not offered in evidence.