18 So.3d 775 (2009)
THE CADLE COMPANY
v.
Harry S. ANDERSON.
No. 2009-CA-0068.
Court of Appeal of Louisiana, Fourth Circuit.
July 30, 2009.
As Amended on Grant of Rehearing September 2, 2009.
Mark C. Landry, Newman Mathis Brady & Spedale, APLC, Metairie, LA, for The Cadle Company.
Elizabeth A. Roussel, Philip A. Franco, Adams and Reese LLP, New Orleans, LA, for Defendant, Harry S. Anderson.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge JAMES F. McKAY, III and Judge MAX N. TOBIAS, JR.).
JOAN BERNARD ARMSTRONG, Chief Judge.
The defendant-appellee, Harry S. Anderson, appeals a judgment of November 7, 2008, denying his motion for summary judgment and granting the motion for summary judgment of the plaintiff-appellee, The Cadle Company, condemning him to pay to The Cadle Company $79,250.00, together with costs and interest from the date of judicial demand.
The parties agree that there are no genuine issues of material fact and the case turns entirely on questions of law.
On February 17, 1990, Harry S. Anderson, A Professional Law Corporation ("the PLC"), executed a Promissory Note in favor of Hibernia National Bank pursuant *776 to which the bank loaned the PLC the sum of $79,250.00. Mr. Anderson executed a personal standard form Commercial Guaranty of the Note which made provision for future advances, but none were ever made. Mr. Anderson's personal liability under the Guaranty was limited by its express terms to the sum of $79,250.00, the amount of the Note.
Hibernia sued only the PLC when the Note matured on February 17, 1991 and obtained a default judgment against the PLC on September 29, 1993 in the principal amount of $78,150.00, together with interest, attorney fees, and costs. Mr. Anderson was not personally named or served in the default judgment. Hibernia assigned the default judgment to The Cadle Company on November 6, 1996. It was not until November 2, 2005, over 12 years after Hibernia obtained the default judgment and over 14 years after the note matured that The Cadle Company filed suit against Mr. Anderson.
Mr. Anderson filed an exception of prescription which was overruled on June 6, 2008.
The parties then filed cross motions for summary judgment, agreeing that there were no genuine issues of material fact, but disagreeing on the law. Although The Cadle Company's original petition demanded a much larger sum, The Cadle Company conceded that, under the terms of the Guaranty, Mr. Anderson maximum principal exposure was $79,250.00. The Guaranty provides that:
The amount of this Guaranty Is Seventy Nine Thousand Two Hundred Fifty & 00/100 Dollars ($79,250.00)....
The Guaranty also contained additional language limiting recovery under it to:
U.S. $79,250.00, including principal, interest, cost, expenses and attorneys' fees.
The Guarantor, Mr. Anderson, guaranteed "all of Borrower's present and future Indebtedness in favor of Lender ..."
The Guaranty further provides that Mr. Anderson's obligation thereunder is solidary.
Although the trial court ruled against Mr. Anderson on his exception of prescription and he says that he is appealing the denial of his motion for summary judgment and not the denial of his exception of prescription, both parties argue that prescription is the only critical issue in the case. We agree with the assertion made on page three of The Cadle Company's brief that:
However, the only issue in the case is whether the claim against Mr. Anderson has prescribed.
Mr. Anderson does not argue that Hibernia was required to join him in the suit against the PLC on the Note. We have found no such requirement in the law. We noted above, under the terms of the Guaranty, Mr. Anderson is a "solidary surety" and as such his position before the law may be less favorable than that of a simple surety. Louisiana Bank and Trust Company, Crowley v. Boutte, 309 So.2d 274, 279-280 (La.1975).
The Cadle Company argues that this court should affirm the trial court and apply the prescription applicable to the judgment which may be reinscribed every ten years ad infinitum under La. C.C. art. 3501. Mr. Anderson argues that he is entitled to the same prescription as that of the Note sued upon, in which case the claim against him would have prescribed.
Apparently, the Note provided for an original interest rate of 5 พ% per annum, which rate jumps to 25% upon default. The effect of 25% interest could quickly cause a small sum to grow to enormous proportions. Mr. Anderson argues that a *777 creditor could deliberately choose to keep re-inscribing a judgment bearing such a high interest rate, rather than trying to immediately execute upon the judgment, in an attempt to see how much interest could be accumulated โ in effect, an argument suggesting bad faith and/or laches. In fact, he argues that this is precisely what The Cadle Company attempted to do by what he refers to as "a pattern of prejudical delay." Moreover, we note that The Cadle Company originally attempted to collect more than $250,000.00 from Mr. Anderson early on in this litigation until Mr. Anderson countered with the provision in the Guaranty which protected him from such a possibility by limiting his liability to the amount of the original loan, $79,250.00, including interest. Thus, while Mr. Anderson's liability is limited by the terms of the Guaranty, the principal for which he contends should be strongly favored by considerations of fairness and public policy in consideration of those future litigants who may not have the benefit of such a favorably worded limitation.[1]
We find that the opinion in Britton v. Bush, 31 La.Ann. 264 (1879). which analyzes the legal principles involved, is fully dispositive of this case. The Britton court explained the legal theory behind the concept of co-solidary obligors (as Mr. Anderson and the PLC were by virtue of his execution of the Guaranty) as applied to prescription where a judgment is obtained against only one of the solidary obligors:
We are referred to Wilson v. McMain, 29 An. 298. That case only decided the very elementary doctrine that a citation interrupts prescription, which remains suspended until judgment, when it again commences its course. It is said that the effect of the rendition of the judgment was to make the prescription on the note similar to that on the judgment. This is erroneous. Hite v. Vaught, 2 An. 971[970]; Dwight v. Brashear, 5 An. 551; Richard v. Butman, 14 An. 144. This current of authority is now strenuously assailed, but we think unsuccessfully. Hite v. Vaught is charged as being ill-considered and not in accord with elementary principles. We do not think so.
The opinion of Mr. Justice Slidell is none the less perspicuous because of its terseness. The industry of counsel has been expended in collecting opinions from the commentators on the Napoleon Code, claimed as overwhelmingly showing the want of proper authority for Hite v. Vaught. We can not with any regard for conciseness review all the authorities quoted, but we will endeavor briefly to show the incorrectness of the propositions which are sought to be defended.
We are told that a judgment constitutes a perpetual acknowledgment on the part of the judgment debtor, therefore *778 the acknowledgment of the debtor interrupted as to his co-solidary obligors. The fallacy is exposed by saying that if the premise were true there would be no prescription of judgments. It is urged that the rendition of the judgment against one of the solidary obligors from the nature of things created a common term of prescription for all. Why so? The theory upon which the law proceeds in making an interruption as to one good as to others is the existence of a legal mandate, ad conservandum obligationem, but such mandate gives no power "ad augendam obligationem." This limitation on the scope of the fictitious legal mandate prevents a judgment rendered contradictorily with one only of the obligors from creating the presumption of res adjudicata as to the obligor not sued. C.C.2098; Rodiere de la Solidarit้, p. 84; Marcad้, vol. 5, p. 199; Duranton, vol.-, No. 520; Aubry et Rau sur Zacharie, vol. 5, p. 74; Mourlon, vol. 2, p. 541....
"Every thing," says Rodiere, in concluding his admirable examination of the scope of the agency between solidary obligors, "we have said can be resumed in two principles, which are that a co-debtor can never make the obligation of his co-obligor more onerous, but he can improve it." [Emphasis added.]
Id., at 265-266; see also, Wooten v. Wimberly, 272 So.2d 303 (La.1973); Continental Supply Co. v. Fisher Oil Co., 156 La. 101, 100 So. 64 (1924).
The essence of what the Britton court is saying as it pertains to the instant case is that one solidary co-debtor can "never make the obligation of his co-obligor more onerous." Thus, the judgment against the PLC cannot enlarge the prescriptive period against Mr. Anderson as guarantor.[2] As explained in Britton, while suit filed against one co-solidary debtor, in the instant case the PLC, interrupts the five year prescription on the note, once the suit is concluded by the rendering of the judgment, the original five-year prescription against the solidary co-debtor, Mr. Anderson commences to run again.
We find that this imposes no particular hardship on the creditor. Hibernia *779 had five years to sue on the note and did so on February 19, 1991. Pursuant to Brock v. First State Bank & Trust Co., 187 La. 766, 175 So. 569 (1937) and Louisiana Bank and Trust Company, Crowley v. Boutte, 309 So.2d 274 (La.1975), Hibernia could have sued Mr. Anderson at the same time as a co-solidary obligor, but chose not to do so for its own reasons. However, having done so, prescription as to Mr. Anderson as a co-solidary obligor was interrupted until Hibernia obtained the default judgment on September 23, 1993. At that point the five-year prescription commenced to run again.
It was not until November 2, 2005, over 12 years after Hibernia obtained the default judgment and over 14 years after the note matured, that The Cadle Company filed suit against Mr. Anderson. Clearly, by that time the claim had prescribed. Therefore, even if we were to apply the ten-year prescriptive period applicable to personal actions under La. C.C. art. 3499 based on the original contract of continuing guaranty, we would still have to find that the claim asserted by The Cadle Company had prescribed.
For the foregoing reasons, we vacate the judgment of the trial court and render judgment in favor of Mr. Anderson at plaintiff's cost.
VACATED AND RENDERED.

ON REHEARING GRANTED
This Court grants rehearing on its own motion in order to clarify its judgment rendered on July 30, 2009 by changing the first sentence found at the top of page "2" of judgment which currently reads as follows:
Mr. Anderson was not personally named or served in the default judgment.
That sentence shall now read:
Mr. Anderson was not personally named or served in the suit. Nor was he named or case in judgment in the default judgment.
In all other respects the language of the judgment shall remain as originally written.
NOTES
[1] The law would have to be very clear and compelling before we would consider such an open ended claim where the co-obligor could be subject without notice of the original judgment many years down the line. The reinscription of a judgment ad infinitum as regards a defendant cast in judgment is very different in that the judgment must be based on due process requirements of notice. Mr. Anderson was never served in his individual capacity with the suit on the note and was never served as such with a notice of judgment. We do not decide whether there may be Mennonite type issues imbedded in the potential for abuse to which a solidary co-debtor without notice could be subjected were we to adopt the position advocated by the plaintiff herein, but we can certainly see some comparisons to the factors that motivated the U.S. Supreme Court to take the position it did in that case. See Mennonite Board of Missions v. Adams, 462 U.S. 791, 800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983).
[2] We wish to make it clear that when we say that one solidary co-debtor cannot enlarge the obligation of another, we are not saying that the PLC could not bind Mr. Anderson for future advances under the Guaranty. We recognize that such a holding would be totally contrary to the entire concept of continuing guaranty. Such would not be an enlargement of the obligation of the solidary co-debtor as the solidary co-debtor expressly assumes the obligation of future advances under the terms of the continuing guaranty. Likewise, we do not rule out the possibility that it may be possible by express contractual provisions in the continuing guaranty to expand the scope of the guarantee to include judgments thereby making the prescriptive period applicable to the judgment applicable to the guarantor (assuming that there were no other defects, e.g., problems of notice, good faith or laches), but there is no reference to judgments in the continuing guaranty signed by Mr. Anderson in the instant case. As we are strongly of the opinion that the guaranty should be strictly construed against the creator of the guaranty form and its successors in interest, in this case the plaintiff, in the absence of any language expressly guaranteeing future judgments such that the prescriptive period applicable to such judgments should become applicable to the guarantor, we shall make no such inference. In other words, we are not persuaded by the plaintiff's argument that the judgment should be treated as another obligation covered by the general language of the continuing guaranty much as though it had been a future advance. In this case there was only one advance; that advance was represented by the Note, and that is the only advance or obligation guaranteed by the Guaranty as there were no future advances. Our holding is limited to the note and guaranty language sued upon by Hibernia.