DOMENGEAUX, Judge.
This suit was originally brought by Gulf National Bank at Lake Charles on a promissory note dated April 28, 1971, in the amount of $14,799.55, plus interest and attorney’s fees. Made defendants were Computer Analysis, Inc., maker of the note, and three endorsers thereof, Charles Murphy, Truman Stacey, and Frank H. Marek, M.D. Stacey and Marek . filed third party demands against each other and also against Murphy and Computer Analysis, Inc.
Stacey and Marek dismissed their third party demands against Murphy and Computer Analysis, Inc., but retained their third party demands against each other. These were denied in a district court judgment which also held all defendants to be liable to plaintiff, in solido, for the full amount of the note plus interest and attorney’s fees. Marek appealed the dismissal of his third party demand against Stacey to this court.
The note in question is made payable to the order of Gulf National Bank at Lake Charles, with the maker being “Computer Analysis, Inc., By: Charles Murphy, President”. On the back side thereof, the note is endorsed by Charles Murphy, Truman Stacey, and Frank H. Marek, M.D., whose signatures appear above their typewritten names in that order. Marek asserts the position that because his signature appears last on the note, he is entitled to indemnity from Stacey, whose signature appears above his. In so urging he relies upon Section 68 of the Negotiable Instruments Law, LSA-R.S. 7:68 which reads as follows :
As respects one another, indorsers are liable prima facie in the order in which they indorse; but evidence is admissible to show that as between or among themselves they have agreed otherwise. Joint payees or joint indorsees who indorse are deemed to indorse jointly and severally.
Under the quoted statute a prima facie order of liability is established by the order of the endorsements on the note. It is also clear, however, that evidence may be introduced to show that the endorsers had agreed otherwise. Such evidence was presented in the case at bar.
Each of the three endorsers to the note, Murphy, Stacey, and Marek, had a substantial pecuniary interest in the continued operation of Computer Analysis, Inc. Murphy and Stacey, both of whom were substantial investors therein, were, respectively, President and Vice-President of Computer Analysis, Inc. Marek had his bookkeeping set up on the services of the corporation, and testified that it would be a most difficult and expensive procedure to change to another system.
Computer Analysis, Inc. was in financial difficulties at the time, and an agreement had been reached whereby a New Orleans *829 firm referred to as Interstate Computing would purchase Computer Analysis, Inc., and continue its services. For reasons that are not entirely clear, the note in question was an essential requirement of the transaction. What is clear from the testimony is that the bank required three endorsements on the note before it would accept it and lend out the money. It is further undisputed that none of the three endorsers received any proceeds from the note.
From this point we quote the succinct and well written opinion of our brother of the trial court:
The evidence is hopelessly in conflict as to the chronological order in which the various endorsements were affixed. Marek insists that Stacey had already endorsed when Marek did. Stacey declared that before he affixed his name to the note he made certain that the signatures of Murphy and Marek were there. Murphy does not remember who signed first, although he knows he took the note first to Marek at Lake Charles Memorial Hospital and then to Stacey at Lake Charles American Press.
The Court does not find it necessary to resolve this conflict in testimony because the Court finds, from the facts based on the testimony of all three of these endorsers, that it was the intent of each of them to condition his liability as an endorser on the assurance that the other two endorsements had been or would be made. All three endorsers so testified. Also, the Gulf National would not have relied upon the endorsement of any one of them, or any two of them; the requirement was made that there be three acceptable accommodation endorsements.
This finding is further supported by the fact that all three endorsers had a substantial financial investment in Cum-puter Analysis, Inc. which it was desirable for each of them to protect.
On these precise facts no Louisiana cases have been found, but this state has adopted the Uniform Negotiable Instruments Law, and a foremost authority on this subject, Britton, Bills and Notes, Section 235, (2nd ed., 1961), discussing the order of liability of accommodation endorsers among themselves, says, at pp. 599-600:
“. . . Where A, B, and C are induced by M to sign a note in his behalf, and each does so, it will be a rare case where A, B, C, will actually discuss how they shall bear the loss as between themselves if M fails to pay. They will not be able to prove an express agreement to become co-sureties with rights of contribution. The whole doctrine in the law of surety-ship that a paying surety may recover contribution from his non-paying co-surety was not established because the parties agreed that they should so share the common burden. It was set up as a rule because it was eminently right, just as many rules in the law of quasi contracts were established, and just as many rules in general contract law came into existence — for example, the whole doctrine of implied conditions precedent to a duty of performance. There is no impelling reason why parties who sign as indorsers for a common debtor should be deprived of some of the fruits of a matured law of suretyship merely because they happened to sign as indorsers of a negotiable instrument. The rights of contribution between surety co-makers are not dependent upon express agreement nor defeated because one of them has signed beneath the signature of the other. Accommodation indorsers should be allowed to overcome the presumption of Section 68 by calling attention to the implications arising from the circumstances surrounding the signing as well as by proving an express agreement to become co-sureties.
*830 There are situations, of course, where two or more indorsers for a common principal debtor are not co-sureties. The presumption set up by Section 68 safeguards these cases.”
From the above we conclude, as did the District Court, “. . . that the presumption of successive liability established by N.I.L. Sec. 68 on the basis of the order of endorsement, has been overcome, and that the circumstances surrounding the signing make a clear showing that the endorsers intended to become co-sureties on a common debt”. Livaudais v. Schwartz, 167 So.2d 499; writ refused, 247 La. 6, 169 So.2d 392.
For the above and foregoing reasons the judgment of the District Court is affirmed at the cost of third party plaintiff-appellant, Frank H. Marek.
Affirmed.