371 So.2d 755 (1979)
Lawrence J. AIAVOLASITI
v.
VERSAILLES GARDENS LAND DEVELOPMENT CO., Edward C. Kurtz, Oliver J. Meyer, Foster Judlin, Louis L. Brothers and Dr. Frank A. Kruse.
George A. AIAVOLASITI
v.
Edward C. KURTZ, Oliver J. Meyer, Foster Judlin, Louis L. Brothers and Dr. Frank A. Kruse.
Nos. 63217-63219.
Supreme Court of Louisiana.
May 21, 1979.
Rehearings Denied June 25, 1979.[*]
*756 Arthur C. Reuter, Reuter & Reuter, New Orleans, for plaintiff-applicant.
John Stassi, II, Edward N. George, III, Stassi & Rausch, Gary J. Rouse, Klein & Rouse, New Orleans, for defendants-respondents.
DENNIS, Justice.
We granted petitioners' application for writs in these consolidated cases to review the court of appeal decision which appears to be inconsistent with the Civil Code rules governing the effects of suretyship between sureties. La.C.C. art. 3058.
This litigation arises from an unsuccessful land development venture in Orleans Parish. The Versailles Gardens Land Development Company was organized for the purpose of financing the venture, but its creditors insisted that the stockholders personally guarantee loans for the enterprise.[1] When the corporation defaulted on its obligations and the creditors demanded payment, one of the stockholders, Lawrence Aiavolasiti, paid or otherwise discharged the debts of the venture and initiated these suits for reimbursement from the other stockholders. Although all of the suits involve promissory notes, each case calls for separate analysis because the stockholders' engagements were different with respect to each debt.

Corporate promissory note personally guaranteed by stockholders
On December 30, 1970, Versailles signed a promissory note made payable on demand to the order of the Whitney National Bank of New Orleans (Whitney) in the amount of $574,000.00 with 9% interest per annum and 10% attorney's fees. Five of Versailles' stockholders, including the plaintiff Lawrence Aiavolasiti and defendants Meyer, Kurtz, Judlin, and Brothers, each gave a separate continuing guaranty to the Whitney for the payment of any indebtedness of *757 Versailles up to the amount of $600,000.00.[2] It is disputed whether a sixth stockholder, Kruse, gave a similar guaranty to the Whitney.
When the Whitney made demand on the stockholders upon their personal guaranties, Aiavolasiti paid the bank the amount due on Versailles' indebtedness and brought suit against the corporation and the other stockholder guarantors. After a default judgment was obtained against Versailles and Kurtz, property mortgaged to secure the debt was sold and the proceeds of the sale were deducted from the amount paid on the note. The trial court rejected Aiavolasiti's demands against Kruse entirely, finding that the latter had not agreed to become personally bound to pay the corporate debt. Aiavolasiti's contention that he should be allowed to recover the full amount from any one of the other guarantors was also rejected, but he was awarded judgment against the remaining guarantors for one-sixth of the amount paid by him plus interest and attorney's fees as provided by the note. The court of appeal amended the judgment to disallow the note rate interest and attorney's fees, and to reduce from one-sixth to one-seventh the virile share for which each defendant would be liable. We conclude that the trial and appellate courts erred in part and that the judgment must be further amended.
In allowing Aiavolasiti to recover against the other guarantors the intermediate court inaccurately characterized the nature of the guarantors' obligations between themselves and consequently fell partially into error. The court of appeal assumed that the guarantors and the principal debtor were all co-debtors in solido. Since one among codebtors in solido who pays the whole debt can claim from the others no more than the part and portion of each, La.C.C. art. 2104, the appeal court reasoned that Aiavolasiti's recovery must be limited to each co-debtor's virile share, counting Versailles, the corporation, as one of the co-debtors.[3]
*758 It is an oversimplification of the relationship between the principal debtor, Versailles, and the individual guarantors to view them as co-debtors in solido for all purposes. Of course, each guarantor bound himself in solido with the principal debtor and agreed to make himself a party to any note signed by Versailles. However, the essential nature of each continuing guaranty was that of a contract of surety because it was an accessory promise by which each guarantor bound "himself for another already bound, and agree[d] with the creditor to satisfy the obligation, if the debtor does not." La.C.C. art. 3035.
In Louisiana Bank and Trust Co., Crowley v. Boutte, 309 So.2d 274 (La.1975) this Court, in reviewing a continuing guaranty almost identical to those now under scrutiny, held that the effect of the application of articles 2106[4] and 3045[5] of the Civil Code is that, as between the creditor and the surety bound in solido with the debtor, the obligations of the surety are governed by the rules of solidary obligors.[6] Between the accessory obligors, themselves, however, we held that the legal relationships may be governed by the rules of suretyship. Id. p. 279.
As this Court indicated in Boutte, the sureties' agreements to be bound in solido with the debtor do not alter the effects of suretyship among the sureties if the continuing guaranty is in essence an accessory promise to pay the debt of a principal obligor. Of course, by clearly expressing an intention to be bound as solidary obligors even among themselves, the guarantors could totally nullify the suretyship nature of the continuing guaranty and choose to be bound purely as solidary obligors. In the instant case, however, the structure of the continuing guaranties as accessory promises, as well as the testimony of the guarantors at trial, convinces us that the parties intended that the rights and obligations between themselves should be governed by the rules of suretyship.
Louisiana Civil Code article 2206 provides that:
"What the creditor has received from one of the sureties, in discharge of his suretyship, must be imputed to the debt, and goes towards the discharge of the principal debtor and the other sureties."
Since the evidence is clear that Aiavolasiti, in response to the Whitney's demand, paid the entire amount owed by Versailles in discharge of his suretyship obligation under his continuing guaranty, the amount paid must be imputed to the principal obligation. The principal debtor and the other sureties were discharged by Aiavolasiti's payment, and his recourse against them consequently must be based on law, as provided by the suretyship rules, and not on contract. The court of appeal, therefore, reached the correct result, although for different reasons, in denying plaintiff judgment based on the promissory note.
Applying the rules of suretyship in the instant case, we conclude that Aiavolasiti, as the surety who has satisfied the debt, has his remedy against each of the other sureties for each surety's proportionate share of the amount paid. La.C.C. art. 3058.[7] This remedy, of course, is separate *759 from that of the surety who has paid the debt to recover the whole amount from the principal debtor. La.C.C. art. 3052.[8] We agree with the court of appeal that the evidence fails to establish that Kruse was a co-obligor in that he did not execute a continuing guaranty as did the other stockholders; nor did he sign the promissory note in any capacity. Accordingly, the court of appeal judgment must be amended to award Aiavolasiti judgment against the remaining guarantors for a one-fifth share each of the debt discharged by Aiavolasiti.

Corporate promissory note endorsed by stockholders
A $19,000.00 promissory note payable on demand to the order of the Whitney was executed by Versailles on April 23, 1973. The note was endorsed by Aiavolasiti and all five stockholder defendants, including Kruse. The evidence reflects that the stockholders were accommodation endorsers since they endorsed the note solely for the purpose of giving credit to the corporation. The record also supports the conclusion that Aiavolasiti paid the note under his obligations as guarantor and endorser when called upon to do so by the Whitney.
The trial court awarded Aiavolasiti judgment against each co-endorser on the note for one-sixth of the amount required to pay the note plus interest and attorney's fees as provided by the note. The court of appeal amended the judgment below to delete the note rate interest and attorney's fees and to reduce the share for which each stockholder defendant would be liable to one-seventh. We conclude that the court of appeal judgment must be amended to allow Aiavolasiti to recover one-sixth of the amount he paid in discharging the $19,000.00 note from each stockholder defendant.
It is readily apparent, from our earlier discussion, that, except for Kruse, the co-endorsers are required, as co-guarantors, to reimburse Aiavolasiti proportionate shares of the debt he satisfied. With respect to the debt underlying the $19,000.00 note, however, Kruse is also a surety and liable for his virile share, not as a co-guarantor, but because of his endorsement of the note.
Since the $19,000.00 Whitney note meets the definition of a negotiable promissory note, see, La.R.S. 7:184, we turn first to the Negotiable Instruments Law for a determination of Kruse's liability.[9] Where a negotiable instrument is paid by a party secondarily liable thereon, it is not discharged, but the party so paying it is remitted to his former rights as regards all prior parties, except in certain instances not here pertinent. La.R.S. 7:121. This rule must be read in conjunction with La.R.S. 7:68, which provides for the order of liability among joint endorsers, as follows:
"As respects one another, indorsers are liable prima facie in the order in which *760 they indorse; but evidence is admissible to show that as between or among themselves they have agreed otherwise. Joint payees or joint indorsees who indorse are deemed to indorse jointly and severally."
Thus, evidence is admissible to overcome the presumption that endorsers have chosen to be liable in the order in which they endorse and to show that between themselves they have agreed otherwise. In the instant case the evidence reflects that the endorsers all affixed their endorsements at approximately the same time and that they definitely intended, among themselves, to be bound as sureties for the debt of the corporation. The testimony revealed that they signed the note as accommodation endorsers of the corporation's note solely to enable it to borrow money to further the land development venture. In addition to the evidence of record, it is well settled that a person who endorses a note solely for the purpose of accommodating the maker is presumed to have done so as surety for the maker. Continental Supply Co. v. Fisher Oil Co., 150 La. 890, 91 So. 287 (1927); C.I.T. Co. v. Rosenstock, 205 So.2d 81 (La. App. 4th Cir. 1967).
Accordingly, the rights and obligations among the six stockholders are governed by the rules of suretyship; and Aiavolasiti is entitled to recover one-sixth of the amount he paid in discharging the $19,000.00 Whitney note from each of the following: Kurtz, Judlin, Meyer, Brothers and Kruse.

Promissory note made by stockholders
On January 22, 1974, Lawrence Aiavolasiti and the five individuals named defendants in these cases executed a note in favor of the International City Bank & Trust Company (ICB) in the amount of $50,755.84. Versailles was not a party to this instrument. Although the note was acquired for value by Lawrence Aiavolasiti's son, George Aiavolasiti, we have concluded that the court of appeal was correct in its determination that George Aiavolasiti was but a nominal party and that Lawrence Aiavolasiti was the true party in interest.[10]
Plaintiff's recovery on this note is not based on contribution from co-sureties pursuant to La.C.C. art. 3058. Lawrence Aiavolasiti and the individual defendants were primary obligors on the note, and they agreed under the terms of the note to be bound in solido rather than as accessory obligors. Plaintiff's recovery is therefore governed by La.C.C. art. 2104, which provides for contribution from co-debtors bound in solido.[11] Since there were six obligors bound on the ICB note, plaintiff is entitled to recover one-sixth of the total amount due from each of the individual defendants. Since Versailles was not itself a party to this note, it is not included in the computation of the virile shares due by the individual defendants.

Conclusion
For the reasons assigned the court of appeal judgment is amended in the following manner:
In case number 63,217, the court of appeal judgment is amended to award Lawrence Aiavolasiti judgment against Oliver Meyer, Foster Judlin, and Louis Brothers *761 for their one-fifth virile share of the amount actually paid by the plaintiff on the $574,000.00 Whitney note, together with legal interest from date of judicial demand.
In case number 63,219, the court of appeal judgment is amended to award Lawrence Aiavolasiti judgment against Oliver Meyer, Foster Judlin, Louis Brothers, and Frank Kruse for their one-sixth virile share of the amount actually paid by the plaintiff on the $19,000.00 Whitney note, together with legal interest from date of judicial demand.
In case number 63,218, the court of appeal judgment is amended to award the plaintiff judgment against Oliver Meyer, Foster Judlin, Louis Brothers, and Frank Kruse for their one-sixth virile share of the amount actually paid by the plaintiff on the $50,755.00 ICB note.
The default judgments taken against Versailles and Edward Kurtz are, of course, not before this Court.
DIXON, J., concurs in part, dissents in part and assigns reasons.
CALOGERO, J., dissents in part, concurs in part for reasons assigned by DIXON, J.
DIXON, Justice (concurring in part and dissenting in part).
Except for the treatment of the January 22, 1974 note payable to the International City Bank and Trust Company in the amount of $50,755.84, with which I agree, I respectfully dissent from the majority opinion.
The continuing guaranty agreement executed by each stockholder except Kruse, securing the Whitney, provided that the guarantor who paid in full would become subrogated to the rights of the bank, as follows: ". . . I agree to pay to said Bank . . . the full amount of any indebtedness . . . becoming subrogated, in the event of payment by me, to the claim of said Bank . . . together with whatever security, if any, it or they may hold against said indebtedness . . ." The Whitney Bank, on July 28, 1975, endorsed its notes to the order of Lawrence Aiavolasiti.
This and other provisions in the continuing guaranty agreement signed by each stockholder except Kruse exhibit clear and specific intent of the stockholders to waive whatever benefit that might be available under the surety provision. Sureties may waive their rights. It is not essential for all obligors to sign the same instrument in order to provide contractually for the obligations among them.
Therefore, it is clear that each shareholder who signed a continuing guaranty agreement agreed that each guarantor could pay the bank and become subrogated to whatever security rights the bank possessed.
All the obligors had the same opportunity to pay the bank. Aiavolasiti did not take undue advantage of his co-obligors. Obviously, he was not in a position to be sued, and was in a position to pay the bank.
As noted in the majority opinion, the $19,000 promissory note was executed by Versailles and endorsed by Aiavolasiti and the other five stockholder defendants. That note, as noted in the majority opinion, was governed by provisions of the Negotiable Instruments Law, Title 7 of the Revised Statutes.
Section 121 of Title 7 provides that when an instrument is paid by an endorser it is not discharged:
"Where the instrument is paid by a party secondarily liable thereon, it is not discharged; but the party so paying it is remitted to his former rights as regards all prior parties, and he may strike out his own and all subsequent indorsements, and again negotiate the instrument, except:
(1) Where it is payable to the order of a third person, and has been paid by the drawer; and
(2) Where it was made or accepted for accommodation, and has been paid by the party accommodated."
It seems to me that Aiavolasiti, having paid the creditor because the principal debtor could not pay when due, is entitled to
*762 whatever benefits he can derive from C.C. 2161, which provides:
"Subrogation takes place of right:
1. For the benefit of him who, being himself a creditor, pays another creditor, whose claim is preferable to his by reason of his privileges or mortgages.
2. For the benefit of the purchaser of any immovable property, who employs the price of his purchase in paying the creditors, to whom this property was mortgaged.
3. For the benefit of him who, being bound with others, or for others, for the payment of the debt, had an interest in discharging it.
4. For the benefit of the beneficiary heir, who has paid with his own funds the debts of the succession."
That is, Aiavolasiti is subrogated to the rights of the bank by law and by contract.
NOTES
[*] Dixon and Calogero, JJ., would grant a rehearing.
[1] With the phenomenal increase of the closely held corporation as a form of business enterprise, suretyship has undergone a rebirth, and it is not uncommon for a lender to advise a debtor who wants to borrow in the name of a corporation that the loan will be made only if the individual personally guarantees the loan to the corporation, i.e., becomes its surety. See, Nathan, The Civil Code and Modern Methods of Financing, 50 Tul.L.Rev. 581, 590 (1976).
[2] Each continuing guaranty provides, in pertinent part:

"* * * I hereby give this continuing guaranty to the said Whitney National Bank of New Orleans, its transferees or assigns, for the payment in full, together with all interest, fees and charges of whatsoever nature and kind, of any indebtedness or liability, direct or contingent, of said debtor to said Whitney National Bank of New Orleans; the extent of my obligation however being limited to the amount of SIX HUNDRED THOUSAND AND NO/ 100ths ($600,000.00)________DOLLARS, plus interest, fees and charges, whether due or to become due and whether now existing or hereafter arising, and I hereby bind and obligate myself, my heirs and assigns, in solido with said debtor, for payment of any such indebtedness or liability precisely as if the same had been contracted and was due or owing by me in person, hereby agreeing to, and binding myself, my heirs and assigns, by all the terms and conditions contained in any note or notes or other obligation or obligations signed or to be signed by said debtor, making myself a party thereto and, waiving all notice and pleas of discussion and division, I agree to pay to said Bank, its transferees or assigns, upon demand at any time, the full amount of any indebtedness, obligation, liability, or sums of money that might become due, up to the amount of this guaranty, together with interest, fees and charges, as above set forth, becoming subrogated, in the event of payment by me, to the claim of said Bank, its transferees or assigns, together with whatever security, if any, it or they may hold against said indebtedness, provided, however, that such subrogation shall become effective when and only when the claim of the Bank, its transferees or assigns, shall have been paid in full; it being understood and agreed that this continuing guaranty, for the amount set forth above, is exclusive of and in addition to any other endorsements, guaranties or obligations, with respect to said debtor, signed by me or any other guarantor or guarantors separate and apart from this instrument, and irrespective of whether such other endorsements, guaranties or obligations with respect to said debtor are limited to the same amount hereinabove set forth, or otherwise. * * *"
[3] In all three of these consolidated cases, the court of appeal found that there were seven co-debtors bound in solidoVersailles, Aiavolasiti, Kurtz, Meyer, Judlin, Brothers, and Kruseand rendered judgment against each co-debtor for one-seventh of the whole debt paid by plaintiff. Neither of the courts below acknowledged a distinction between the computation of the virile shares on the $574,000 Whitney note and the smaller $19,000 Whitney note, even though both courts held that Kruse was in no way bound on the larger note. It would appear that both of the lower courts mistakenly included Kruse in the computation of virile shares due by the other co-obligors on the $574,000 Whitney note.
[4] La.C.C. art. 2106 provides:

"If the affair for which the debt has been contracted in solido, concern only one of the co-obligors in solido, that one is liable for the whole debt towards the other codebtors, who, with regard to him, are considered only as his securities."
[5] La.C.C. art. 3045 provides:

"The obligation of the surety towards the creditor is to pay him in case the debtor should not himself satisfy the debt; and the property of such debtor is to be previously discussed or seized, unless the security should have renounced the plea of discussion, or should be bound in solido jointly with the debtor, in which case the effects of his engagement are to be regulated by the same principles which have been established for debtors in solido."
[6] For scholarly commentary on Louisiana Bank and Trust Co., Crowley v. Boutte, 309 So.2d 274 (La.1975), see, Nathan, The Civil Code and Modern Methods of Financing, 50 Tul.L.Rev. 583, 590-91 (1976); The Work of the Louisiana Appellate Courts for the 1974-1975 TermSecurity Devices, 36 La.L.Rev. 437 (1976); Note, 36 La.L.Rev. 279 (1976).
[7] La.C.C. art. 3058 provides:

"When several persons have been sureties for the same debtor and for the same debt, the surety who has satisfied the debt, has his remedy against the other sureties in proportion to the share of each; but this remedy takes place only, when such person has paid in consequence of a lawsuit instituted against him."
Although this article permits contribution only if the debt was paid in consequence of a lawsuit, this does not prevent plaintiff's recovery in the present suit. Contribution is permitted even if the debt was not paid in response to a lawsuit provided that the co-sureties had knowledge that the debt was due or consented to the payment. Leigh v. Wright, 192 La. 224, 187 So. 649 (1939). The other guarantors clearly had knowledge that the debt was due in the present case, and no possible defense was suggested at trial. Moreover, since all of the guarantors were bound in solido with the principal debtor, there is no reason to require the delay pending lawsuit. See, Louisiana Bank and Trust Co., Crowley v. Boutte, 309 So.2d 274, 279 (La.1975).
[8] La.C.C. art. 3052 provides:

"The surety who has paid the debt, has his remedy against the principal debtor, whether the security has been given with or without the knowledge of the debtor.
"This remedy takes place both for the principal and interest, and for the costs which the surety may have been sentenced to pay; but with regard to the costs, the remedy of the surety begins only from the day he has given notice to the principal debtor, that a suit was commenced against him."
[9] The rights and liabilities of the endorsers are governed by the Negotiable Instruments Law, the law in effect at the time they undertook their respective obligations by signing the note. The N.I.L. has since been repealed and replaced. Acts 1975, No. 92 (codified as Title 10 of the Revised Statutes), effective January 1, 1975.
[10] The trial court record reveals that George Aiavolasiti purchased the note with funds loaned to him by his father; that Lawrence Aiavolasiti, acting on advice of counsel, arranged for his son to purchase the note; and that no records were kept of the loan made from Lawrence Aiavolasiti to his son. Apparently there was no agreement between father and son as to terms for repayment. While transactions between family members are not presumed to be simulated or fraudulent, we conclude there was a reasonable basis for the findings of the courts below that, under the circumstances, George Aiavolasiti was acting only as an agent for his father in purchasing the $50,755 ICB note.
[11] La.C.C. art. 2104 provides:

"If one of the codebtors in solido pays the whole debt, he can claim from the others no more than the part and portion of each.
"If one of them be insolvent, the loss occasioned by his insolvency must be equally shared amongst all the other solvent codebtors and him who has made the payment."