396 So.2d 573 (1981)
Alvin DAIGLE, Plaintiff and Appellant,
v.
David D. CHAISSON et al., Defendant and Appellee.
No. 8047.
Court of Appeal of Louisiana, Third Circuit.
March 11, 1981.
*574 Newman & Fazzio, A. J. Fazzio, Lake Charles, for plaintiff and appellant.
Logan Nichols, Jennings, Handley & Lavern, Douglas J. Handley, Lake Charles, for defendant and appellee.
Before CULPEPPER, FORET and SWIFT, JJ.
CULPEPPER, Judge.
This is a suit on a promissory note. Plaintiff Alvin Daigle, an indorser and presently the holder of the note, seeks indemnity or, in the alternative, contribution from the defendant, David Chaisson, a co-indorser. The district court rejected plaintiff's claim against defendant. Plaintiff appeals.
The principal issue is whether plaintiff, suing as an accommodation indorser who has paid the instrument, has a right of recourse against defendant, and, if so, for how much.
On March 22, 1979, Jerry Iguess made a promissory note payable to the Calcasieu Marine National Bank in the amount of $7,000 with 10% interest and attorney's fees. On the reverse side of the note appear the names of Alvin Daigle, David Chaisson and Marlene Daigle, plaintiff's wife. Under each of these names is the word "endorser". The note became due on July 20, 1979.
On May 18, 1979, Jerry Iguess, the maker of the note, filed a petition for bankruptcy listing the Calcasieu Marine Bank note as one of his items of liability. Mr. Iguess received a discharge in bankruptcy on August 9, 1979.
*575 When the note became past due, the bank knew that Iguess had filed a petition in bankruptcy court, so the bank made demand on both Daigle and Chaisson as indorsers. Daigle testified that at this point he asked Chaisson to pay the note, but Chaisson refused. Preferring not to damage his own credit, plaintiff purchased the note from Calcasieu Marine for the sum of $7535, of which $7,000 was the principal and the remainder was interest. He then filed the present suit against both Chaisson and Iguess for the sum of $7,535 which he paid for the note, plus legal interest thereon and a reasonable attorney's fee. In the alternative, he seeks judgment against Chaisson as co-indorser for one-half the amount he paid for the note. Iguess was later dismissed by plaintiff as a party.
After the presentation of the evidence, the district court denied plaintiff any indemnity or contribution against Chaisson. In its written opinion, the court concluded that plaintiff could not obtain contribution from a co-indorser without first seeking recourse from the maker. For the reasons which follow, we reverse.
Under the Commercial Laws, La. R.S. 10:1-101, et seq. adopted in 1975 and repealing the former Negotiable Instruments Law, an accommodation party is "one who signs the instrument in any capacity for the purpose of lending his name to another party to it." La.R.S. 10:3-415(1). From the note itself, it is apparent that Daigle, his wife and Chaisson signed the note as indorsers. The accommodation character of the three indorsements is also clear since they do not appear in the chain of title to the note. La.R.S. 10:3-415(4). This finding is also supported by the testimony which reflects that the names of the three indorsers were added to the instrument as additional security for the bank.
Directly above the three indorsements on the note is found the following language: "... the undersigned hereby jointly and severally guarantee to the Calcasieu Marine National Bank of Lake Charles, its successors, indorsers or assigns, the punctual payment at maturity of said loan;". The three indorsements on the reverse side of the note appear in a horizontal line rather than vertical. Plaintiff's indorsement is farthest to the left followed by that of Chaisson and then plaintiff's wife.
Initially, we interpret the phrase "jointly and severally" to mean that the three indorsers bound themselves in solido with the principal obligor. The common law term "joint and several" has been held synonymous with our Civil Law term "in solido". Johnson v. Jones-Journet, 320 So.2d 533 (La.1975), Ford Motor Credit Company v. Soileau, 323 So.2d 221 (La.App. 3rd Cir. 1975). Moreover, as these parties "guaranteed" the punctual payment of the loan, the bank could proceed directly against each indorser for the whole amount without first making demand upon the maker. La.R.S. 10:3-416(1). The Official Comment to Uniform Commercial Code, Section 3-416 states:
"An indorser who guarantees payment waives not only presentment, notice of dishonor and protest, but also all demand upon the maker or drawee. Words of guarantee do not affect the character of the indorsement as an indorsement [Section 3-202(4)]; but the liability of the indorser becomes indistinguishable from that of the co-maker."
The order of liability of indorsers is provided in La.R.S. 10:3-414(2) as follows:
"Unless they otherwise agree, indorsers are liable to one another in the order in which they indorse, which is presumed to be the order in which their signatures appear on the instrument.
It could be argued under Section 3-414(2) that since plaintiff signed farthest to the left, followed by Chaisson, on the horizontal line on which all three indorsers signed, that plaintiff indorsed first and is precluded by this section from any recourse against Chaisson. However, the presumption of Section 3-414(2) may be rebutted by evidence which shows a different order or division of liability was intended or agreed to by the parties. See La.R.S. 10:3-415(3) *576 and Gulf National Bank v. Computer Analysis, Inc., 278 So.2d 827 (La.App. 3rd Cir. 1973), construing a similar provision of the Negotiable Instruments Law.
In the instant case, the testimony shows that Jerry Iguess and David Chaisson were business partners engaged in a welding business. The present debt was incurred to purchase land and equipment for their welding shop. Plaintiff testified that his and his wife's names were supplied to the instrument only to accommodate Iguess. Daigle testified that he had no financial interest in defendants' business, nor did he receive any of the funds borrowed. The record also shows that all three indorsements were affixed to the instrument simultaneously.
We think the circumstances surrounding the signing of the note, as well as the other factors mentioned, negate any intent on the part of the indorsers to be bound in the order in which they signed. All of the evidence in the record shows no indorser was to share a greater portion of the liability than the other co-indorser. Chaisson makes no contention to the contrary.
We thus conclude that Section 3-414(2) does not bar plaintiff from seeking recourse against his co-indorsers. We find, however, no provisions in the Commercial Laws which provide for indemnification or contribution between accommodation indorsers once the presumption of Section 3-414(2) has been overcome.
We are aware that in THE WORK OF THE LOUISIANA APPELLATE COURTS FOR THE 1978-79 TERMSECURITY DEVICES, 40 La.L.Rev. 572 at 574, the author suggests La.R.S. 10:3-415(5) should be construed to mean that "An accommodation indorser who pays the holder may still pursue the other indorsers and the maker on the instrument and recover whatever attorney's fees, costs, and interest the note provides." The entire Section 3-415 reads as follows:
"Sec. 3-415. Contract of accommodation party
"(1) An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it.
"(2) When the instrument has been taken for value before it is due the accommodation party is liable in the capacity in which he has signed even though the taker knows of the accommodation.
"(3) As against a holder in due course and without notice of the accommodation oral proof of the accommodation is not admissible to give the accommodation party the benefit of discharges dependent on his character as such. In other cases the accommodation character may be shown by oral proof.
"(4) An indorsement which shows that it is not in the chain of title is notice of its accommodation character.
"(5) An accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party."
In our view, Subsection (5) governs only the relationship between the accommodation party and the "party accommodated." The party accommodated in most cases is the maker, but it could be a prior indorser in the chain of title or another party. The rule which Section 3-415(5) makes clear is that an accommodation party is not liable to the party accommodated, whoever he be, and if an accommodation party pays the instrument he has a right of recourse on the instrument against such party, meaning the party accommodated. We cannot construe Subsection (5) as meaning that where one of two or more accommodation co-indorsers agrees to be bound in solido to pay the principal obligation, as in the present case, that one of the accommodation parties can pay the instrument and sue the other accommodation parties "on the instrument" for the principal debt, interest, attorney's fees, etc.
Our construction of the statute is supported by the Official Comment under the U.C.C., Section 3-415 which reads as follows:

*577 "5. Subsection (5) is intended to change the result of such decisions as Quimby v. Varnum, 190 Mass. 211, 76 N.E. 671 (1906), which held that an accommodation indorser who paid the instrument could not maintain an action on it against the accommodated party since he had no `former rights' to which he was remitted. Under ordinary principles of suretyship the accommodation party who pays is subrogated to the rights of the holder paid, and should have his recourse on the instrument."
The Comment, Suretyship Law And Negotiable Instruments Law: The Liability Of An Accommodation Party To A Negotiable Instrument In Louisiana, 24 Loy.L.R. 251 at 258 also supports our position:
"Article 3 (of the U.C.C.), unlike the Negotiable Instruments Law, recognizes that an accommodation party, whether he signs the instrument as a maker or as an indorser is basically a surety. The official comments emphasize the accommodation party's suretyship nature: `He differs from other sureties only in that his liability is on the instrument and he is a surety for another party to it. His obligation is therefore determined by the capacity in which he signs.' The comments continue to discuss the liability of an accommodation maker, a party not generally treated as a surety under prior law. Because the comments repeatedly refer to the accommodation party as a surety, "the drafters doubtless intended suretyship law, at least to some extent, to apply in defining the liability of the accommodation party. Because the Uniform Commercial Code does not generally purport to regulate suretyship law, the drafters in referring to the accommodation party as a surety presumably meant to refer to the state law of suretyship. What remains unclear is the extent to which state suretyship law may be used to define the liability of the accommodation party."
Having concluded the Commercial Laws contain no provisions for indemnification or contribution amongst accommodation indorsers, once the presumption of La.R.S. 10:3-414(2) is overcome, we must look to other areas of Louisiana law which may apply to the instant case. La.R.S. 10:1-103 provides: "Unless displaced by the particular provisions of this title, the other laws of Louisiana shall apply."
When Daigle and Chaisson signed the note as accommodation indorsers and guarantors, they contracted to become solidary sureties for the principal debtor. La. C.C. Article 3035, C. I. T. Corporation v. Rosenstock, 205 So.2d 81 (La.App. 4th Cir. 1967). Moreover, the U.C.C. Official Comment to Section 3-415 states: "an accommodation party is always a surety (which includes a guarantor), and it is his only distinguishable feature."
Our Louisiana law of suretyship expressly recognizes the right of a surety who has paid the primary debt to seek recourse from other co-sureties. La.C.C. Article 3058 provides:
"When several persons have been sureties for the same debtor and for the same debt, the surety who has satisfied the debt, has his remedy against the other sureties in proportion to the share of each; but this remedy takes place only, when such person has paid in consequence of a lawsuit instituted against him."
Our Supreme Court has recently applied these rules of suretyship to accommodation indorsers. In Aiavolasiti v. Versailles GardensLand Development Co., 371 So.2d 755 (La.1979), five stockholders of a corporation, including Aiavolasiti, executed a separate continuing guarantee binding themselves in solido with the corporation for the latter's debts. The corporation issued two notes, the first signed only by the corporation, while the second was signed by the five guarantors, plus a sixth stockholder as accommodation indorser. When the corporation defaulted, and the bank made demand on the stockholders under their guaranties, plaintiff, one of the guarantor stockholders, bought both notes. Then he sued the corporation and the five other stockholders. A default judgment was obtained against the corporation. Relying on La.C.C. Article 3058, the Supreme Court awarded *578 plaintiff, on the first note, contribution from each co-surety for one-fifth of the amount plaintiff paid, representing the virile share of each surety. On the note where six parties had signed as accommodation indorsers, the Supreme Court, again applying the rules of suretyship, awarded plaintiff contribution of one-sixth of the amount paid as the virile share of each indorser. On each note, the corporation was excluded from the calculation of the virile share.
The facts in the instant case are substantially identical to those involving the second note in Aiavolasiti, supra. As in Aiavolasiti, the accommodation indorsers and guarantors in the present case bound themselves in solido with the debtor. Thus, with respect to the bank, the indorsers were co-debtors in solido. The legal relationship between the accessory obligors, however, is governed by the rules of suretyship, absent a clear intention to be bound as solidary obligors even among themselves. We find no such intention in the present case. Following Aiavolasiti, we conclude that plaintiff is entitled to recover Chaisson's proportionate share of the debt under La.C.C. Article 3058. There being three accommodation indorsers, plaintiff is entitled to recover from Chaisson one-third of the amount he paid in satisfaction of the debt.
We are aware of the proviso in LSA-C.C. Article 3058 that a surety can seek contribution from the other sureties only "when such person has paid in consequence of a lawsuit instituted against him." However, in Aiavolasiti, supra, footnote 7 at page 758 the court stated:
"Although this article permits contribution only if the debt was paid in consequence of a lawsuit, this does not prevent plaintiff's recovery in the present suit. Contribution is permitted even if the debt was not paid in response to a lawsuit provided that the co-sureties had knowledge that the debt was due or consented to the payment. Leigh v. Wright, 192 La. 224, 187 So. 649 (1939). The other guarantors clearly had knowledge that the debt was due in the present case, and no possible defense was suggested at trial. Moreover, since all of the guarantors were bound in solido with the principal debtor, there is no reason to require the delay pending lawsuit. See, Louisiana Bank and Trust Co., Crowley v. Boutte, 309 So.2d 274, 279 (La.1975)."
In the present case, as in Aiavolasiti, no case was filed against the plaintiff, but the co-surety from whom he seeks contribution knew that the debt was due and also urged no defense to the debt at trial. Moreover, in the present case, as in Aiavolasiti, the co-surety guarantors are bound in solido with the principal debtor.
In his claim for indemnification, plaintiff seeks, in addition to the amount he paid, reasonable attorney's fees. However, in his alternative claim for contribution, no demand for attorney's fees is made. Thus, we decline to award plaintiff any attorney's fees in the present case.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, Alvin Daigle, and against the defendant, David D. Chaisson, for the sum of $2,511, together with legal interest thereon from date of judicial demand until paid and for all costs of these proceedings both in the trial and appellate courts.
REVERSED AND RENDERED.