521 So.2d 411 (1987)
Willis SIMS, Jr.
v.
ASIAN INTERNATIONAL, LTD., Stanford International, Inc., H. Grady Smith, Jr., Norman C. Barrett, Ben F. Fort, Jr., Glenn D. Bynum, David J. Dennis and Edmund C. McCallum.
No. CA 86 0986.
Court of Appeal of Louisiana, First Circuit.
October 14, 1987.
On Rehearing February 26, 1988.
Writ Denied May 6, 1988.
Claude Reynaud, Jr., Baton Rouge, for plaintiff-appellee Willis Sims, Jr.
John Thibaut, Jr., Baton Rouge, for defendants-appellees H. Grady Smith, Jr. and Glenn Bynum.
Michael O. Hesse, St. Francisville, for defendants-appellants Stanford Intern., Ben Fort, Jr. and David Barrett.
David Dennis, pro se.
Before WATKINS, CARTER and CHIASSON[*], JJ.
CHIASSON, Judge.
This is a suit on a promissory note. Plaintiff-appellee, Willis Sims, Jr., brought suit on a note in the amount of $50,000.00 against the co-makers of the note, Asian International, Ltd. and appellant Stanford International, Inc. Also named as defendants in the suit were the endorsers and guarantors of the note, H. Grady Smith, Jr., Norman C. Barrett, appellant Ben F. Fort, Jr., Glenn D. Bynum, David J. Dennis and Edmund C. McCallum. After initial proceedings,[1] plaintiff moved for and was granted a summary judgment against all defendants except Fort, who was granted a continuance. On appeal, this court reversed the summary judgment, holding that genuine disputes of material fact existed.
After trial on the merits judgment was rendered in favor of Sims for the full amount of the note, plus interest and attorney's fees, less a credit for $5,000.00 reflecting a payment made by Asian subsequent to the filing of the lawsuit. The trial judge also dismissed the reconventional demand which had been brought by Stanford against Sims, claiming a breach of the agency agreement between Asian and Great Wall Trading Company. From this judgment, Stanford and Fort are suspensively appealing.

*412 FACTS
In May of 1981, Bynum approached Sims with the proposition of participating in a business venture importing Chinese products. To this end, Bynum introduced Sims to Smith, who was at that time president of both Asian and Stanford. Smith, in an effort to raise working capital, tried to convince Sims to invest as a stockholder in either Asian or Stanford. Smith needed to raise the capital to finance a trip by Asian/Stanford to China as well as take care of operating expenses for both Asian and Stanford.
Sims refused the stock offer, but countered with the loan of the money to Stanford and Asian with an option to buy stock in exchange for cancellation of the loan if and when Sims thought the investment would be a desirable one. As a condition of the loan Sims required that there be personal guarantees on the note by the investors in Asian and Stanford, binding themselves in solido with the makers of the note. If Sims were to decline the option to buy the stock, the note would be payable on its due date. An additional contract entitled "Assignment of Accounts Receivable" was provided by Asian and Stanford to Sims, pledging certain enumerated accounts receivable potentially due to Asian and Stanford from the Chinese.
Because Asian and Stanford also needed access to Sims' contacts with the petrochemical industry in the Baton Rouge area (through Sims' family owned company, Acadian Electric), it was suggested that Sims form an independent corporation to act as an agent of Asian in the United States. Sims and others incorporated Great Wall Trading Company and executed an agency agreement between Great Wall and Asian whereby Great Wall would market the Chinese goods imported by Asian to the petrochemical industry in south Louisiana.
On November 21, 1981, the due date of the note, it had not yet been paid. On December 10, 1981, Sims sent a demand letter requesting payment. Prior to the demand being sent, however, Asian and Stanford became embroiled in a dispute with each other, culminating in Asian locking Stanford out of its offices. The demand letter had been sent to Smith as president of both Asian and Stanford. Smith responded by denying that he, Stanford, or anyone else owed Sims the money. Asian, however, acknowledged the debt and asked Sims to wait until Asian and/or Stanford received payment from the Chinese. Because no payment was forthcoming Sims brought this suit.
While litigation was pending, Sims entered into several agreements with Asian including: 1) an acknowledgment of the debt; 2) an agreement to let the matter go to judgment; 3) a promise on Asian's part to pay the money as quickly as it could; and 4) the inclusion of Guaranty Assurance Corporation and Frank V. de la Barre to guarantee the debt of Asian. As evidence of their good faith Asian made partial payment of $5,000.00 on the note. Additionally, Great Wall executed a contract nullifying and superceding the original agency agreement and creating a new relationship between Asian and Great Wall. Stanford continually denied any obligation to Sims.

ASSIGNMENTS OF ERROR
Appellants contend that the trial court erred in:
1) failing to find that the contract between Sims and de la Barre/Guaranty Assurance Company constituted an impairment of the collateral pledged to secure the original loan in the form of an assignment of contract commissions within the meaning of R.S. 10:3-606; and
2) failing to find that the failure of Great Wall to make purchases under the original agency agreement constituted a breach of contract for which Sims would be liable to Stanford.

ASSIGNMENT OF ERROR NO. 1
The note provided above the endorsement that endorsers would be liable in solido with the maker. The defense provided by R.S. 10:3-606 is not available to a solidary surety. As solidary sureties, the endorsers of the note enjoy no greater rights *413 against the creditor than does the maker of the note. The relationship between a creditor and a solidary surety is governed by the articles on solidary obligors, not by the rules of suretyship. Aiavolasiti v. Versailles Gardens Land Development Co., 371 So.2d 755 (La.1979). La.R.S. 10:3-606 is found in the rules of suretyship and is therefore inapplicable in the instant case. Thus, the defense of impairment of collateral is unavailable to appellants in this case.
Furthermore, we find no manifest error in the trial judge's finding of fact that there was no impairment of collateral, hence we cannot disturb this finding of fact on appeal. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
This assignment of error has no merit.

ASSIGNMENT OF ERROR NO. 2
Sims is not a party to the contract between Great Wall and Asian. He signed this contract only in his capacity as agent for Great Wall. It is well settled that in Louisiana a person entering into a contract is only responsible in the capacity in which he signs. La.C.C. art. 3013. If there is any vagueness or ambiguity concerning the capacity in which Sims signed the contract, it must be interpreted in favor of Sims. La.C.C. arts. 2056, 2057.
Stanford could not bring the reconventional demand against Sims not only because Sims was not a party, personally, to the contract, but because Stanford is neither a party nor a beneficiary to the contract. Therefore, Stanford has no standing to bring this action. La.C.C. arts. 1978, 1979.
This assignment of error is without merit.

DECREE
For the above reasons the judgment of the trial court is affirmed at appellants' costs.
AFFIRMED.
CARTER, J., concurs in the result.

ON REHEARING
PER CURIAM.
We granted a rehearing so that we could reconsider the relationship of Fort as an accommodation endorser to Sims as creditor on the note. We have reexamined the connexity between LSA-R.S. 10:3-415 and 10:3-606 and the provisions of the Louisiana Civil Code on suretyship and conclude the provisions of Title 10 of the Revised Statutes apply as to the relationship of an accommodation party to the creditor on a note.
In their relationship to the creditor, multiple accommodation parties are each liable as sureties for the whole of the debt. As to one another, accommodation parties are liable for their virile shares. Aiavolasiti v. Versailles Gardens Land Dev. Co., 371 So.2d 755 (La.1979); Darby v. Doucet, 482 So.2d 986 (La.App. 3d Cir. 1986). Thus, as to the creditor, the rules of suretyship apply to accommodation parties. Among themselves, the rules of solidary obligations apply to accommodation parties.
In the present case, Fort and the other endorsers of the note were as to Sims accommodation parties and subject to the rules of suretyship. See LSA-R.S. 10:3-415. Thus, while as to one another the endorsers of the note (among whom are numbered Fort) were each liable for their virile share, as to the creditor (Sims) each was liable for the whole of the debt. As a result of the release of Asian and its collateral, Fort as endorser lost his right to proceed against Asian as a principal maker of the note. Under LSA-R.S. 10:3-606, this discharge of Asian by Sims constitutes an impairment of collateral given by Asian as it defeats Fort's right of recourse against Asian and the collateral supplied by Asian.
Thus, the defense of impairment of collateral has merit and we were incorrect in stating that the relationship between a creditor and a solidary surety is governed by the articles of the Civil Code on solidary obligations.
*414 Accordingly, because Fort's right of recourse against Asian was extinguished, we hold Fort to have been discharged as a debtor by impairment of collateral under LSA-R.S. 10:3-606.
The judgment of the trial court is reversed, and our judgment rendered October 14, 1987 is set aside, and Ben F. Fort, Jr. is discharged as a defendant, all costs to be borne by Willis Sims, Jr.
REVERSED.
NOTES
[*] Judge Remy Chiasson, retired, has been assigned temporarily to this court by the Supreme Court of Louisiana to fill the vacancy created by the death of Judge John S. Covington.
[1] A default judgment against some of the defendants was nullified.